**Allowed.**
Aug 15, 2025

*[signature]*
U.S.M.J.

## Affidavit in Support of a Criminal Complaint

I, ATF Special Agent Michael J. Carpentier, being duly sworn, state:

### Introduction

1.  I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18. I have been employed by ATF as a Special Agent since August of 2022. Previously, I served as a full-time certified police officer in the state of New Hampshire for approximately eight years. During my tenure as a police officer, I also served in the role of detective with the Hooksett (NH) Police Department. I graduated from Walden University with a bachelor's degree in Nutritional Science and from Southern New Hampshire University with a master's degree in business administration. I attended and successfully completed training at the New Hampshire Police Academy, which is conducted at the New Hampshire Police Standards and Training Council in Concord, New Hampshire. I attended and successfully completed the Department of Homeland Security Criminal Investigator Training Program and the ATF Special Agent Basic Training program, both of which are conducted at the Federal Law Enforcement Training Center in Glynn County, Georgia.

2.  I have received specialized training in firearms identification and the investigation of firearm-related offenses, both as a police officer and special agent. I have participated in investigations involving persons who are in possession of firearms in furtherance of the distribution of narcotics, and the use of firearms in the commission of violent acts. I have

participated in investigations involving individuals who are distributing illegal narcotics. As such, I have coordinated the controlled purchases of illegal narcotics, utilizing confidential sources. I have conducted electronic and physical surveillance of individuals involved in illegal narcotic distribution and the unlawful possession of firearms. I have received training, both formal and on-the-job, in the provisions of the federal firearms and narcotics laws administered under Titles 18, 21 and 26 of the United States Code. Through my training and experience, I have become familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in criminal activity and other organized criminal activity. I am familiar with the "street" language used by firearm and/or drug traffickers via electronic communication facilities, as well as the methods they use to disguise conversation and operations.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and task force officers. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4. On August 14, 2025, I obtained a federal warrant to search the Somerville, Massachusetts residence of Robert BUTLAND (year of birth 1987) for evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 922(g)(1). The affidavit in support of the search warrant is attached as Sealed Exhibit 1 and incorporated by reference.

5. In summary: ATF investigation showed that since at least 2022 BUTLAND had been purchasing 3D printers and associated materials, firearm parts, firearm accessory kits and narcotic precursors. Based upon my training and experience, I know that 3D printers have the capability of producing and manufacturing polymer/nylon type frames to house the integral

2

components of a fully functioning firearm. Based on my training and experience, I also know that individuals who build or assemble a "ghost gun" often purchase such items. Based on my training and experience, I am aware that a "ghost gun," also referred to as a privately made firearm ("PMF"), is a firearm, including a frame or receiver, assembled or otherwise produced by a person other than a licensed manufacturer. PMFs or "ghost guns" do not have serial numbers or other markings placed by a licensed manufacturer at production. Ghost guns are typically assembled from parts purchased separately or obtained through kits sold online.

6. I have reviewed BUTLAND's criminal record and know that on or about January 20, 2017, he was convicted in the Lawrence District Court, Docket 1618CR6935, of various offenses, including assault and battery on a police officer, resisting arrest, and wanton destruction of property, for which he was sentenced to two and a half years in the house of correction, with three months to serve and the balance suspended.[1] Based on these convictions, BUTLAND is not legally able to own or possess firearms or ammunition. Furthermore, BUTLAND does not possess a License to Carry in the state of Massachusetts and is not a licensed firearm manufacturer.

7. On August 15, 2025, at approximately 6:00 a.m., the ATF Boston Violent Crime Joint Strike Force executed the federal search warrant at BUTLAND's residence. During the execution of the search warrant, law enforcement encountered BUTLAND and another adult male

---

[1] Butland was also convicted and sentenced on other offenses charged in the same docket: negligent operation of a motor vehicle (two years in the house of correction, with three months to serve and the balance suspended); possession of a Class B substance (one year in the house of correction, with three months to serve and the balance suspended); and assault and battery with a dangerous weapon (continued without a finding). Butland subsequently violated probation; on or about August 13, 2018, a guilty finding was entered on the ABDW charge, and his suspended sentences were revoked. He was sentenced to 27 months on all of the listed charges except the negligent operation charge (21 months) and the drug charge (9 months).

(YOB 1955) ("Person 1") inside of the residence. BUTLAND and Person 1 have separate bedrooms in the residence. Person 1 stated that he does not have access to BUTLAND's bedroom because BUTLAND keeps his room locked. No evidence was found or seized from Person1's bedroom.

8. BUTLAND and Person 1 were detained in handcuffs. BUTLAND declined to speak with investigators. Law enforcement conducted a systematic clearing of the residence for additional persons or threats. After the residence was deemed clear and safe, law enforcement executed a systematic search for evidence, pursuant to the search warrant. During the execution of the search, law enforcement located a bedroom in the rear of the residence. The bedroom contained mail with Robert BUTLAND's name and address. Law enforcement also located subscription medication with Robert BUTLAND's name on it in the same bedroom.

9. Within BUTLAND's bedroom, law enforcement encountered a locked closet that had to be forcibly opened. Within the closet, law enforcement located numerous suspected privately made firearms (PMFs), otherwise known as "ghost guns." Most of the suspected "ghost guns" did not contain serial numbers or other indicia of having been sold commercially. Within the same closet law enforcement located numerous solvent traps, that are commonly used as illegal firearm suppressors. Additional suspected "ghost guns" were located throughout Robert BUTLAND's bedroom within nightstands, backpacks and coffee table drawers. Law enforcement also located numerous firearms parts, accessories and 3D printers and filament (the material used with 3-D printers). Law enforcement noted that the firearms parts and accessories were ordered from numerous companies across the country. Law enforcement also located a room within the residence

that contained an additional 3-D printer, a work bench, and tools consistent with tools that would be required for the assembly and manufacture of firearms. The closet is depicted below:



10. Within BUTLAND's bedroom, law enforcement also recovered miscellaneous ammunition varying in calibers: 9mm luger ammunition, Frontier 5.56 Hornady ammunition and 7.62x39mm ammunition. The ammunition recovered within BUTLAND's bedroom was manufactured outside of Massachusetts. No commercially available ammunition is manufactured in Massachusetts.

## CONCLUSION

11. Based on all of the foregoing, I submit that there is probable cause to believe that

on or about August 15, 2025, BUTLAND, knowing that he was previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, ammunition, that is: ammunition varying in calibers: 9mm luger ammunition, Frontier 5.56 Hornady ammunition and 7.62x39mm ammunition.

Respectfully submitted,

_____
Michael J. Carpentier, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn via telephone in accordance with Fed. R. Crim. P. 4.1 on August 15, 2025.

_____
Honorable Jessica D. Hedges
United States Magistrate Judge