UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 25-mj-03231-JDH

UNITED STATES OF AMERICA

v.

ROBERT BUTLAND

**ORDER ON GOVERNMENT'S MOTION FOR DETENTION**

HEDGES, M.J.

Defendant Robert Butland is charged by criminal complaint with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Docket No. 2. On August 15, 2025, Mr. Butland came before this Court for an initial appearance, at which time the Government moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(E) and (f)(2)(A). Docket No. 3. I held a hearing on the Government's motion for detention on August 20, 2025, during which the parties proceeded by proffer. Docket No. 12. The Government argued that no condition or combination of conditions would reasonably assure the safety of others and the community. *See* 18 U.S.C. § 3142(f). Mr. Butland argued that certain conditions, including travel restrictions and an order prohibiting him from possessing firearms or 3-D printing devices capable of manufacturing firearms, would suffice.

At the conclusion of the hearing, I found that based on the evidence, the parties' arguments, and the pretrial services report submitted by the U.S. Office of Probation and Pretrial Services ("Probation Office"), the Government had shown that no condition or combination of conditions will reasonably assure the safety of others and the community. For the reasons stated on the record at that hearing, which are explained in further detail below, I accordingly order that Mr. Butland be detained pending trial.

I.  **LEGAL STANDARD**

The Bail Reform Act of 1984 "carefully limits the circumstances under which detention may be sought ...." *United States v. Salerno*, 481 U.S. 739, 747 (1987); *see United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that [the Bail Reform Act] clearly favors nondetention."); *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) ("[I]t is only a 'limited group of offenders' who should be denied bail pending trial." (citation omitted)). To detain a defendant pending trial, the government must establish (a) by clear and convincing evidence, that the defendant is a danger to the community, and no set of conditions can reasonably assure the safety of the community; or (b) by a preponderance of the evidence, that the defendant poses a serious risk of flight, and no set of conditions can reasonably assure the defendant's appearance as required. *See* 18 U.S.C. §§ 3142(e), (f); *United States v. Patriarca*, 948 F.2d 789, 791-93 (1st Cir. 1991).

"Because the law … generally favors bail release, the government carries a dual burden in seeking pre-trial detention." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007); *see United States v. Cotto*, No. 3:13-cr-30023-MAP, 2013 WL 4411264, at *1 (D. Mass. Aug. 14, 2013) (describing two-step process). First, the court may not hold a detention hearing unless one of the conditions authorizing a hearing under 18 U.S.C. § 3142(f) exists. *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (explaining that a motion for detention "is permitted only when the charge is for certain enumerated crimes [under § 3142(f)(1)] … or when there is a serious risk that the defendant will flee, or obstruct or attempt to obstruct justice [under § 3142(f)(2)]"). "The § 3142(f) categories are not mere incantations that will conjure a hearing upon their simple utterance." *United States v. Subil*, No. 2:23-cr-00030-TL, 2023 WL 3866709, at *4 (W.D. Wash. June 7, 2023). Instead,

"[t]he Act requires that the Government make a factual showing to justify why it should be given a shot at detention." *Id.* (citing *United States v. Singleton*, 182 F.3d 7, 12 (D.C. Cir. 1999) ("[A] detention order is based on a hearing, while an order to hold a hearing is based on a proffer of what the hearing might establish.")).  Section 3142(f) thus "serves an important gate-keeping function by preventing even the opportunity to seek detention in all but a certain, narrow subset of cases." *Id.* (cleaned up).  If none of the § 3142(f) conditions apply, the government has not satisfied its initial burden, and the defendant must be released.  *See Ploof*, 851 F.2d at 11.

If the government establishes that one or more of the § 3142(f) conditions apply, it must then establish that no set of conditions will reasonably assure the defendant's appearance as required or the safety of any other person or the community.  18 U.S.C. § 3142(c); *Shakur,* 817 F.2d at 195 ("The burden of proof is on the government to prove the absence of such conditions[.]").  The court must impose the least restrictive conditions necessary to provide those reasonable assurances.  18 U.S.C. § 3142(c)(1)(B).  When determining if release is appropriate, the court must consider (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence; (iii) the defendant's history and characteristics; and (iv) the nature and seriousness of the danger posed.  18 U.S.C. § 3142(g).  "Doubts regarding the propriety of release are to be resolved in favor of defendants." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).

"Because of the interference of pretrial detention with the important and fundamental right of liberty, despite the presumption of innocence pending trial, this Court will not make … a finding [that detention is warranted] lightly." *United States v. Powell*, 813 F. Supp. 903, 906 (D. Mass. 1992) (cleaned up).  Accordingly, in deciding whether to detain or release Mr. Butland, I

3

remain mindful of *Salerno*'s mandate that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755.

## II. EVIDENCE RELEVANT TO DETENTION[1]

Mr. Butland, who is thirty-seven years old, was born in Massachusetts and raised in New Hampshire. At this time of his recent arrest, Mr. Butland was living in Somerville and working full-time as a laborer at a local union.

As explained by his counsel at the detention hearing, Mr. Butland is in recovery from substance use disorder. Mr. Butland has a criminal record dating back to 2006, principally consisting of controlled substance-related and motor vehicle charges. In December 2016, however, Mr. Butland was charged with a more serious slate of offenses in Lawrence District Court. On January 20, 2017, Mr. Butland pled guilty to several of these offenses, including possession of a class B substance, assault and battery on a police officer, and malicious destruction of property. The court sentenced Mr. Butland to thirty months incarceration, with all but three months of that sentence suspended.[2] Mr. Butland's probation was subsequently revoked, however, and he was committed for the remainder of his sentence.

Mr. Butland identifies his last period of incarceration as a turning in point in his life, and he indicates that he committed to his recovery after being released from custody approximately seven years ago. Roughly four to five years ago, Mr. Butland moved to Somerville, Massachusetts. Since that time, he has been steadily employed, working for two unions. It

---

[1] Much of this personal history is derived from the Pretrial Services Report submitted by the Probation Office, which is not in the public record and is in the custody of the Court. Much of this information was, however, discussed in open court during the detention hearing.

[2] Mr. Butland is prohibited from possessing a firearm or ammunition that has been shipped or transported in interstate or foreign commerce because he was sentenced to more than one year of incarceration. *See* 18 U.S.C. § 922(g)(1).

appears that he has also been actively committing himself to the difficult work of recovering from a serious substance use disorder. Many of Mr. Butland's family members traveled from New Hampshire to attend Mr. Butland's detention hearing, and many more submitted letters in support of his request to be released on conditions pending trial. In these letters, Mr. Butland's family members praise his evolution since 2017, his strong work ethic, his dedication to his recovery, and his devotion to his family. Mr. Butland is described in these letters as thoughtful, caring, and quick to offer a helping hand.

The Government represents that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") began investigating Mr. Butland in May 2025 after it learned that he had been purchasing 3-D printers, firearm parts, and firearm accessory kits since at least 2022. Docket No. 2-2 ¶ 5. 3-D printers can be used to manufacture frames used to house the integral components of a firearm. *Id.* Thus, individuals who manufacture privately made firearms, or "ghost guns," often use 3-D printers to do so. *Id.* "Ghost guns" do not have serial numbers. *Id.* Nor do they have the sort of distinctive markings that licensed manufacturers place on firearms. *Id.*

On August 15, 2025, the ATF Boston Violent Crime Joint Strike Force searched Mr. Butland's residence pursuant to a warrant. *Id.* ¶ 7. Mr. Butland shares his residence with a relative, but no evidence was found or seized from the relative's bedroom. *Id.* Law enforcement recovered over 100 firearms from a room believed to be Mr. Butland's bedroom,[3] more than a dozen of which are assault-style rifles. *See* Docket No. 10 at 1, 6. The majority of the firearms were stored in a locked closet, but law enforcement also found firearms in a nightstand, coffee

---

[3] Mail addressed to Mr. Butland and prescriptions bearing his name were found in this bedroom. Docket No. 2-2 ¶ 8.

5

table drawers, and backpacks in Mr. Butland's bedroom. *See* Docket No. 2-2 ¶ 9. A significant number of the firearms seized by law enforcement lack serial numbers or other indicia of having been sold commercially. *Id.* The Government suspects these firearms are "ghost guns" that Mr. Butland privately manufactured using 3-D printers and firearm components purchased from various retailers. *See id.*; Docket No. 10 at 1. Law enforcement also seized multiple 3-D printers, filament designed for use in 3-D printers, firearm components, firearm accessories, ammunition varying in calibers, and solvent traps, which the Government represents are often used as illegal firearm suppressors, from Mr. Butland's bedroom. *See* Docket No. 2-2 ¶¶ 9-10. A separate room in Mr. Butland's residence had been set up as a workshop, and it contained a work bench, a 3-D printer, and tools consistent with those used to assemble and manufacture firearms. *Id.* ¶ 9. Law enforcement noted that the firearm parts and accessories seized from Mr. Butland's residence were ordered from numerous companies across the country. *Id.*

On August 15, 2025, the same day that law enforcement searched Mr. Butland's residence, Mr. Butland was arrested and charged by criminal complaint with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Docket No. 2. Later that day, Mr. Butland came before this Court for an initial appearance and the Government moved for a detention hearing under 18 U.S.C. §§ 3142(f)(1)(E) and (f)(2)(A). Docket No. 3. Finding that the Government had satisfied its burden under 18 U.S.C. § 3142(f)(1)(E), I scheduled a detention hearing for August 20, 2025. Docket No. 6. On August 19, 2025, the Government filed a memorandum supporting its request for detention, which Mr. Butland opposed the same day. Docket Nos. 9 (sealed), 10.[4] On August 20, 2025, I held a

---

[4] I allowed Mr. Butland's motion to seal his opposition brief, as it contains sensitive personal medical information. Docket Nos. 8 (sealed), 11 (sealed).

detention hearing at which the parties proceeded by proffer. Docket No. 12. After receiving evidence and hearing argument from the parties, I found that the Government had shown that no condition or combination of conditions would reasonably assure the safety of others and the community if Mr. Butland were released. Accordingly, I ordered Mr. Butland detained and stated that a written order would follow.

### III. ANALYSIS

#### A. Applicability of 18 U.S.C. § 3142(f) Conditions

The Government moved for a detention hearing under 18 U.S.C. §§ 3142(f)(1)(E) and (f)(2)(A), asserting that Mr. Butland presents a danger to others and the community and that he presents a serious flight risk. I found that a detention hearing was warranted because there is probable cause to believe that Mr. Butland committed an offense involving the possession or use of a firearm. *See* 18 U.S.C. § 3142(f)(1)(E).

I did not, however, find that a detention hearing was warranted because Mr. Butland poses a serious risk of flight. At Mr. Butland's initial appearance, counsel for the Government asserted that it need only surpass a "low threshold" and an "ever-so-slight hump" to obtain a detention hearing under 18 U.S.C. § 3142(f)(2)(A). Not so. The Government must instead prove by a preponderance of the evidence that a defendant poses a serious risk of flight to obtain a detention hearing under 18 U.S.C. § 3142(f)(2)(A). *See United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023); *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1124 (N.D. Iowa 2018); *United States v. Djoko*, No. 19-cr-0146-JCC, 2019 WL 4849537, at *2 (W.D. Wash. Oct. 1, 2019); *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *7 (M.D. Tenn. May 27, 2021); *U.S. v. Pavon-Andino*, No. 25-mj-00022-TPO, 2025 WL 446143, at *1 n.1 (D. Colo. Feb. 10, 2025). In moving for detention on this ground, the Government referred the court generally to the complaint and search warrant affidavit, and

argued only that Mr. Butland poses a serious risk of flight because of his criminal history, the nature of the offense, and the weight of the evidence against him—that is, the Government merely recited three of the four § 3142(g) factors. The § 3142(g) factors guide this Court's determination of whether any condition or combination of conditions can reasonably assure a defendant's appearance and the safety of others. They are not, as the Government would have it, factors that the Government can recite to conjure a detention hearing. Because the Government failed to produce evidence or meaningfully develop any argument supporting its contention that Mr. Butland poses a serious flight risk, I found that it failed to carry its burden to demonstrate that a detention hearing was warranted under 18 U.S.C. § 3142(f)(2)(A). Nevertheless, because there are grounds for conducting a hearing under 18 U.S.C. § 3142(f)(1)(E), I must consider the factors under 18 U.S.C. § 3142(g) to determine whether there are any conditions of release that will reasonably assure the safety of any other person and the community.[5]

### B. Analysis of Factors Under 18 U.S.C. § 3142(g)

#### i. *Nature of the Offense and Weight of the Evidence*

Mr. Butland is charged by criminal complaint with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g). Docket No. 2. This is a serious offense, the magnitude of which is exacerbated by the evidence offered in support of this charge. Law enforcement seized over 100 firearms from Mr. Butland's bedroom, the vast majority of which were stored in a locked closet, as well as ammunition varying in calibers. *See* Docket No. 2-2 ¶ 9; Docket No. 10 at 1, 6-9. The Government proffered that over a dozen of these firearms

---

[5] The Government did not develop its argument that Mr. Butland poses a risk of flight at either the detention hearing or in the memorandum it submitted in support of its detention motion. In light of this, and because I find that no condition or combination of conditions will reasonably assure the safety of others or the community, I do not reach the issue of whether any condition or combination of conditions will reasonably assure Mr. Butland's appearance as required.

are assault-style rifles, and law enforcement located additional firearms throughout Mr. Butland's bedroom, including in nightstands, backpacks, and coffee table drawers. *See* Docket No. 2-2 ¶ 9; Docket No. 10 at 1, 6, 8-9. Law enforcement also recovered solvent traps, which the Government avers are often used as illegal firearm suppressors. *See* Docket No. 2-2 ¶ 9.

Of particular concern is the Government's allegation that Mr. Butland personally manufactured many of these firearms as "ghost guns" using 3-D printers and firearm components that he purchased from various retailers. *See* Docket No. 10 at 1. Substantial evidence supports this allegation. Law enforcement recovered multiple 3-D printers, printing filament, and firearm components and accessories from Mr. Butland's bedroom and a second room in his residence, which had been set up as a workshop and contained tools consistent with those used to assemble and manufacture firearms. *See* Docket No. 2-2 ¶ 9. The nature of the offense and the weight of the evidence accordingly weigh heavily against release.

### ii. *History and Characteristics*

Mr. Butland has, as discussed, a criminal record dating back to 2006. Until 2017, Mr. Butland was primarily charged with and convicted of controlled substance and motor vehicle offenses. In January 2017, however, Mr. Butland was convicted of serious offenses in Lawrence District Court, including offenses related to drug possession, property destruction, and assault on a police officer. Although the District Court suspended most of the thirty-month sentence it imposed, Mr. Butland was ultimately committed for the suspended portion of his sentence after he violated the terms of his probation.

I also consider that Mr. Butland's criminal history appears to be intertwined with his struggles with substance use disorder. With the exception of one conviction from 2007, his drug-related offenses are for drug possession rather than distribution. Mr. Butland contends that

9

he began to take his recovery seriously after he was released from custody approximately seven years ago, and he has made commendable strides in many facets of his life since then. He has worked on his recovery from an often disabling disorder and has made very meaningful progress in achieving sobriety. He worked full-time as a union laborer for the past three years, and before that, he spent four years apprenticing with another union. The support of Mr. Butland's family members, as demonstrated by their willingness to travel to court from New Hampshire and submit letters on his behalf, attests to his recent growth.

I weigh heavily, however, evidence indicating that even as Mr. Butland was devoting himself to his recovery, work, and family, he was also acquiring and manufacturing an illegal arsenal of firearms. As discussed, law enforcement seized over 100 firearms from Mr. Butland's bedroom, as well as numerous 3-D printers and other materials consistent with those needed to privately manufacture and assemble firearms. A collection of this size and breadth suggests that, by the time of his arrest, Mr. Butland had devoted a substantial amount of time and attention to this activity. This is troubling, and it must be considered, notwithstanding the significant strides that Mr. Butland has made in his personal and professional life over the past several years. I accordingly find that Mr. Butland's history and characteristics favor detention.

### iii. *Nature and Seriousness of Danger that Would Be Posed by Release*

The Government has convinced me that the immediate risk of danger to others and the community is too great to release Mr. Butland. I do not reach this conclusion lightly, especially given Mr. Butland's efforts to confront his substance use disorder, his meaningful work history, and the substantial support offered by his family members. For several reasons, however, the evidence presented by the Government leads me to conclude that no combination of conditions will reasonably assure the safety of others and the community.

Most concerning to me is the evidence strongly suggesting that Mr. Butland manufactured and assembled a significant percentage of the firearms seized from his bedroom. Of further concern is evidence that many of the firearms seized from Mr. Butland's residence are suspected "ghost guns" that lack serial numbers or other identifying characteristics. As argued by the Government, "ghost guns" pose a unique danger to the community because the absence of identifying characteristics makes it difficult or impossible for law enforcement to identify and trace these weapons when they are used for violent or illegal purposes.

I am also troubled by the quantity and characteristics of the firearms found in Mr. Butland's residence. It is unlawful for Mr. Butland to possess *any* firearms or ammunition, yet the Government has presented evidence that he possessed more than 100. Moreover, many of the seized firearms appear to be assault-style rifles. And law enforcement found solvent traps in Mr. Butland's bedroom, which, the Government represents, can be used as illegal firearm suppressors.

Mr. Butland proposes that he be released on a variety of conditions that would allow him to continue his positive work trajectory while restricting his access to the internet, substances, and devices that can be used to manufacture firearms. While Mr. Butland's proposed release plan has many positive aspects, it fails to address the substantial evidence offered by the Government indicating that, without any purpose that became clear at the hearing, Mr. Butland created a personal arsenal of largely untraceable and highly dangerous firearms in the months preceding his arrest. None of the conditions proposed by Mr. Butland adequately mitigate the risk that this suggests.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755. This case presents one such exception.

Based on the evidence presently before me, I am convinced that no combination of conditions would reasonably assure the safety of others and the community if Mr. Butland were released pending trial. Mr. Butland is advised, however, that he may seek another detention hearing at any time before trial if circumstances change such that "information exists that was not known to [him] at the time of the hearing and that has a material bearing" on whether there are conditions that will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(f).

## IV. CONCLUSION

It is hereby ORDERED that Mr. Butland be DETAINED pending trial. It is further ORDERED that:

1. Mr. Butland be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. Mr. Butland be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Mr. Butland is detained and confined deliver him to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

Mr. Butland is advised that he has the right to file a motion for revocation or amendment of this Order under the provisions of 18 U.S.C. § 3145(b) and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts.

Date: September 8, 2025

/s/ Jessica D. Hedges

United States Magistrate Judge